RECEIVED

SEP 1 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PRINCESS P. LaCAZE | CIVIL ACTION NO. 07-0236 |
| VS. | SECTION P |
| MARIANA LEGER, WARDEN, LCIW | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## REPORT RECOMMENDING DISMISSAL OF SOME BUT NOT ALL OF PETITIONER'S CLAIMS FOR *HABEAS CORPUS* RELIEF

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on February 12, 2007 by *pro se* petitioner Princess P. LaCaze. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. She is incarcerated at the Louisiana Correctional Institute for Women (LCIW), St. Gabriel, Louisiana where she is serving the life sentence imposed following her 1998 conviction for second degree murder in the Tenth Judicial District Court, Natchitoches Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that Claims 2, 3, 4, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 be **DENIED AND DISMISSED WITH PREJUDICE** because these claims were not fairly presented to the Louisiana Supreme Court on either direct or

collateral review and; while these claims are "technically exhausted" since no state court remedies remain available to the petitioner, the claims are now considered procedurally defaulted and petitioner has shown neither cause or prejudice for her default nor has she shown that a miscarriage of justice would result upon the court's failure to address the merits of her claims.  It does appear that Claims 1, 5, 7, and 8 have been fully exhausted and therefore, in a separate order, the undersigned has directed the respondent to address the merits of these remaining claims.

### Background

#### 1. The Trial

On January 8, 1998, petitioner and her co-defendant, Meryland Robinson were indicted and charged with second degree murder by the Natchitoches Parish Grand Jury. [Exhibit 1, Appendix A, pp. 26-27] On August 27, 1998 petitioner was found guilty as charged following trial by jury. [Exhibit 1, Appendix A, p. 49] On September 9, 1998 she was sentenced to life imprisonment. [Exhibit 1, Appendix A, p. 50] On September 30, 1998 petitioner was re-sentenced because the judge had previously failed to specify that the life sentence was without benefit of parole. [Exhibit 1, Appendix A, pp. 51-52]

#### 2. The Appeal

Petitioner appealed her conviction to the Third Circuit

Court of Appeals. On June 4, 1999, her appellate attorney, Mr.

Timothy Allen Meche filed a Motion to Remand to the District

Court to Supplement the Record on Appeal. [Exhibit 1, Appendix F]

On June 11, 1999 the Third Circuit denied the motion. [Exhibit 1,

Appendix G] Thereafter, in her counseled appeal brief dated June

18, 1999, petitioner argued eleven Assignments of Error.

> Assignment of Error No. 1 – The incomplete state of the
> record on appeal prevents full review of Ms. LaCaze's
> conviction and sentence in violation of her rights to
> effective assistance of counsel, judicial review, due
> process and appropriate punishment secured by U.S.
> Const. Amends. VI, VIII, and XIV, and La. Const. Art.
> 1, §§ 2, 13, 19, 20 and 22.

> Assignment of Error No. 2 – The trial court's
> intemperate criticism, improper curtailment of voir
> dire and outrageous conduct directed solely towards
> defense counsel violated Ms. LaCaze's rights to
> effective assistance of counsel, full voir dire
> examination, due process and trial by an impartial and
> fair jury in violation of rights secured by U.S. Const.
> amends. VI and XIV, and La. Const. Art. 1, §§ 2, 13,
> 16, 17, and 22 and requires reversal of her conviction
> and sentence.

> Assignment of Error No. 3 – The trial court reversibly
> erred in denying Ms. LaCaze's motion to dismiss the
> fourth panel of prospective jurors following the
> court's off-record outburst and threat to hold defense
> counsel in contempt, which violated Ms. LaCaze's rights
> to effective assistance of counsel, due process and
> trial by an impartial and fair jury in violation of
> rights secured by U.S. Const. amends. VI and XIV, and
> La. Const. Art. 1, §§ 2, 13, 16, and 22.

> Assignment of Error No. 4 – The trial court reversibly
> erred in denying defense cause challenges to
> prospective jurors in violation of Ms. LaCaze's rights
> to full voir dire examination and to challenge jurors
> peremptorily under La. Const. Art. 1, §17 and her
> rights to due process and an impartial jury under U.S.
> Const. amends. VI and XIV and La. Const. Art 1, §§ 2

3

and 16.

Assignment of Error No. 5 – The trial court reversibly
erred in denying Ms. LaCaze's motion to make back
strikes of juror in violation of her rights to full
voir dire examination to challenge jurors peremptorily
under La. Const. Art. 1, §17 and La. C.Crim. P. art.
795.

Assignment of Error No. 6 – The trial court reversibly
erred in denying Ms. LaCaze's motion for individual
sequestered voir dire in violation of her rights to
full voir dire examination and to challenge jurors
peremptorily under La. Const. Art. 1, §17 and her
rights to due process and an impartial jury under
U.S.Const. Amends. VI and XIV and La. Const. Art. 1, §§
2 and 16.

Assignment of Error No. 7 – The trial court reversibly
erred in denying a mistrial due to the prosecutor's
improper references to inculpatory statements which had
not been ruled admissible and had not been adequately
disclosed, in violation of Ms. LaCaze's rights to due
process, to present an adequate defense and to a fair
trial under U.S. Const. Amends. VI and XIV, La. Const.
Art. 1, §§ 2 and 16.

Assignment of Error No. 8 – The trial court reversibly
erred in permitting the introduction of inculpatory
statements that had previously been ruled inadmissible
and had not been disclosed in discovery, in violation
of Ms. LaCaze's rights to due process, to present an
adequate defense and to a fair trial under U.S. Const.
Amends. VI, XIV, La. Const. Art. 1, §§ 2 and 16.

Assignment of Error No. 9 – The trial court reversibly
erred in permitting the State to introduce evidence of
other bad acts that had not been disclosed during
discovery in violation of Ms. LaCaze's rights to due
process to present an adequate defense and to a fair
trial under U.S.Const. Amends. VI and XIV, La. Const.
Art. 1, §§ 2 and 16.

Assignment of Error No. 10 – The prosecutor, throughout
the trial engaged in a pattern of improper commentary
so extremely prejudicial and inflammatory as to violate
Ms. LaCaze's rights to due process and a fair trial by
an impartial jury secured by U.S. Const. Amends VI and

4

XIV, and La. Const. Art. 1, §§ 2 and 16.

Assignment of Error No. 11 – The trial court's
instruction on the State's burden of proof improperly
permitted the jury to find Ms. LaCaze guilty even if
they had a reasonable doubt as to her guilt, in
violation of Ms. LaCaze's rights to due process and
trial by jury secured by U.S. Const. Amends, VI and
XIV, and La. Const. Art. 1, §§ 2 and 16. [Exhibit 1,
Appendix D, pp. 88-89]

On December 8, 1999 the Third Circuit Court of Appeals affirmed

the conviction and sentence. State of Louisiana v. Princess P.

LaCaze, 1999-728 (La. App. 3 Cir. 12/8/1999), 759 So.2d 773. [see

also Slip Opinion, Exhibit 1, Appendix C]

### 3. *Writ Application to the Louisiana Supreme Court*

On January 7, 2000, petitioner, through counsel, filed an

application for writs in the Louisiana Supreme Court. Instead of

presenting argument on each of the Assignments of Error on

appeal, petitioner's attorney argued various claims contained

within four specific Assignments of Error:

Assignment of Error No. 1 – The Third Circuit failed to
fulfil its constitutional duty to conduct a full and
complete review of this matter because the court
refused to remand the case to the district court for
the purpose of supplementing the incomplete record,
while relying on sheer speculation that several errors
raised in the appeal either were unpreserved or were
harmless because the incomplete record did not
demonstrate otherwise, in violation of Ms. LaCaze's
rights to effective assistance of counsel, judicial
review, due process and appropriate punishment secured
by the Eighth and Fourteenth Amendments to the United
States Constitution and Article 1, Sections 2, 19, 20,
and 22 of the Louisiana Constitution. [Exhibit 1, p.

5][1]

Assignment of Error No. 2 – The Third Circuit's failure
to review Ms. LaCaze's claim that the trial court's
continuous disparaging treatment of defense counsel
violated her rights to effective assistance of counsel,
due process and trial by an impartial and fair jury
denied Ms. LaCaze her constitutional right to appeal.
[Exhibit 1, p. 12][2]

Assignment of Error No. 3 – The Court of Appeal
misapplied State v. Ballard, in holding that the trial

---

[1] Counsel then argued elements of Assignment of Error No. 1, "In her
first assignment of error on appeal, Ms. LaCaze argued that, in the event the
court did not reverse on other grounds, a remand to supplement the record was
necessary. The circuit court mischaracterized this claim (and several others)
as an argument that reversal was required due to the incomplete state of the
record and denied relief, concluding that '[o]ur review of the record and the
defendant's argument do not indicate that she has shown that the lack of
recordation of the bench conferences, in general, has prejudiced her' and that
'the omissions are far less egregious than those at issue in [State v.]
Landry, [07-0499 (La. 6/29/99), — So.2d —)].' Slip. Op. at 5-6." [Exhibit 1,
p. 7]

He also argued elements of Assignment of Error No. 3, "In assignment of error
number 3, Ms. LaCaze argued that the trial court reversibly erred in failing
to grant a mistrial, or alternatively, to dismiss the panel of jurors who
witnessed the trial judge threaten to hold defense counsel in contempt during
an off-the-record bench conference. In addressing this error, the Third
Circuit paid virtually no attention to defense counsel's subsequent, recorded
characterization of this bench conference and concluded that this assignment
of error had no merit because the record did not reflect a timely objection
and the trial court characterized his own conduct as inconsequential."
[Exhibit 1, p. 7]

He likewise argued elements of Assignment of Error No. 4, "In assignment of
error number 4, Ms. LaCaze argued that the trial court erred in denying
several of her cause challenges." [Exhibit 1, p. 8]

Finally, he argued elements of Assignment of Error No. 8, "In assignment of
error number 8, Ms. LaCaze urged that the trial court improperly admitted
testimony by Simon Sarpy..." [Exhibit 1, p. 9]

[2] Petitioner argued the substance of Assignment of Error Number 2 on
appeal, "In her second assignment of error, Ms. LaCaze argued that the trial
judge's intemperate criticism, improper curtailment of voir dire, and
outrageous conduct directed solely towards defense counsel during voir dire
adversely influenced and prejudiced the jury against Ms. LaCaze to such an
extent that reversal is required." [Exhibit 1, p. 12] Petitioner's argument
before the Louisiana Supreme Court raised no federal constitutional violations
and cited no federal law. [id., pp. 12-18]

6

court did not err in denying Ms. LaCaze's challenge for
cause to a prison guard who knew not only numerous
deputy-sheriffs involved in the investigation of the
case, but the state's star witness, petitioner's co-
defendant, because the prospective juror was one of the
prison guards assigned to guard the co-defendant.
[Exhibit 1, p. 18][3]

Assignment of Error No. 4 – The Third Circuit erred in
ruling that the prosecutor's conduct in repeatedly
misstating facts in evidence, appealing to the jury's
prejudices, and unfairly bolstering the credibility of
the state's key witness on the basis of the
prosecutor's personal knowledge was not improper and
did not violate Ms. LaCaze's rights to Due Process and
a fair trial. [Exhibit 1, p. 20][4]

On October 6, 2000, the Supreme Court denied writs without

comment. State of Louisiana v. Princess P. LaCaze, 2000-0058 (La.

10/6/2000), 770 So.2d 359. [See also Exhibit 2] Petitioner did

not seek further direct review in the United States Supreme

Court. [doc. 1-1, ¶6(d)]

**4. Application for Post-Conviction Relief in the District Court**

On September 27, 2001, through counsel, petitioner filed an

Application for Post-Conviction Relief in the District Court.

---

[3] Petitioner argued, "In her fourth assignment of error, Ms. LaCaze
argued that the trial court erred in denying five of her challenges for cause,
forcing her to squander peremptory challenges on three of those jurors and
leaving two on the jury as Ms. LaCaze had exhausted her peremptory strikes."
The argument that ensued centered around the appellate court's
misinterpretation of a recent Louisiana Supreme Court decision (State v.
Ballard, 98-2128 (La. 10/19/99), 747 So.2d 1077)) which dealt with peremptory
challenges to law enforcement officers. [Exhibit 1, pp. 18-20] Again, counsel
argued no violations of federal law.

[4] Petitioner argued that this final claim concerned petitioner's
Assignment of Error No. 10 on appeal, "In her tenth assignment of error, Ms.
LaCaze urged that the prosecutor ... engaged in a pattern of improper
commentary so extremely prejudicial and inflammatory that reversal was
required." [Exhibit 1, p. 20]

[Exhibit 3][5] While that matter was pending in the District Court, counsel for the petitioner sent written requests to the District Attorney and Sheriff to examine the case files under Louisiana's Public Records Law. On December 11, 2001 the District Attorney and Sheriff permitted counsel to review the entire contents of their respective files. On some date between December 11 – December 18, 2001, counsel for petitioner filed a Motion for Extension of Time to Supplement the Application for Post-Conviction Relief based upon his claim that "[p]roper investigation of these newly revealed materials will require some additional time..."  On December 18, 2001, the District Judge granted petitioner's motion and gave counsel an additional period of 120 days within which to supplement the Application for Post-Conviction Relief. [Exhibit 4]

On January 24, 2002 counsel submitted another Public Records

---

[5] Petitioner's post-conviction counsel argued 18 Claims for relief, briefly paraphrased as follows: (1) The incomplete record on appeal denied petitioner effective assistance of counsel, judicial review, due process and appropriate punishment [Exhibit 3, p. 3]; (2) trial court's prejudicial remarks, limitation of voir dire and criticism of trial counsel [id., p. 6]; (3) the trial court refused to excuse a jury panel that overheard prejudicial remarks made by the court to petitioner's trial counsel [id., p. 12]; (4) the trial court denied challenges for cause [id., p. 13]; (5) the trial court's refusal to permit "back strikes" at the conclusion of voir dire [id., p. 17]; (6) the trial court refused to order individual voir dire [id., p. 19]; (7) the state's improper opening argument [id., p. 21]; (8) introduction of statements made by witness Simon Sarpy [id., p. 23]; (9) evidence of prior bad acts was introduced [id., p. 24]; (10) the state's improper and prejudicial comments [id., p. 26]; (11) trial court's improper jury instruction on reasonable doubt [id., p. 28]; (12) ineffective assistance of counsel [id.]; (13) ineffective assistance of appellate counsel [id., p. 30]; (14) failure of the State to disclose exculpatory evidence [id.]; (15) illegal selection process for grand jury foreperson [id.]; (16) illegally constituted grand jury [id., p. 31]; (17) juror misconduct [id.]; (18) cumulation of errors. [id.]

8

request to the District Attorney requesting permission to review additional material. [Exhibit 5, P-1] On April 12, 2002 counsel filed a Petition for Writ of Mandamus in the District Court which alleged that the District Attorney had failed to comply with the Public Records Request. [Exhibit 5]

Thereafter, on some unspecified date in April, petitioner's attorney filed a First Supplemental Application for Post Conviction Relief and Memorandum of Law. [Exhibit 6][6]

On July 15, 2002, the District Judge denied relief. [Exhibit 7] In due course, counsel filed a Notice of Intent to Seek Writs and on July 30, 2002 was granted a return date of September 30, 2002. [Exhibit 8 at p. 2]

## 5. *Writ Application to the Third Circuit Court of Appeals*

On August 7, 2002 petitioner's counseled writ application was filed in the Third Circuit Court of Appeals. [Exhibits 8 and 9] On April 22, 2003 the Third Circuit granted writs in part and otherwise denied relief, stating,

> The record before this court is insufficient to
> determine Relator's claims involving the State's
> failure to reveal an alleged promise to Meryland
> Robinson that it would not seek charges against his son
> in exchange for testimony against Relator and the

---

[6] In his Supplemental Post-Conviction Application, petitioner argued four additional claims: (1) Brady v. Maryland, 373 U.S. 83 (1963) violation based on the State's failure to disclose its promise to co-defendant Meryland Robinson to refrain from prosecuting the Robinson's son in return for his testimony against the petitioner at trial; and (2) failure to disclose that the testimony of witness Simon Sarpy was hypnotically induced; (3) the State's improper use of Art. 66 subpoenas; and, (4) ineffective assistance of counsel for failing to request jury instruction on solicitation of murder. [Exhibit 6]

alleged failure of the State to reveal that Simon
Sapry's [sic] testimony was based upon hypnotically
induced memory. Consequently, these claims are remanded
to the trial court for an evidentiary hearing.
Relator's claims regarding her trial counsel's
ineffectiveness for failing to request a jury
instruction regarding the solicitation of murder and
the State's misuse of the La. Code Crim.P. art. 66
subpoena lack merit. See <u>State v. Telford</u>, 384 So.2d
347 (La. 1980), <u>Strickland v. Washington</u>, 466 U.S. 668,
104 S.Ct. 2052 (1984) and <u>State v. Williams</u>, 617 So.2d
557 (La. App. 3 Cir.), *writ denied*, 623 So.2d 1331 (La.
1993).

Relator's remaining assignments of error are repetitive
having been reviewed and denied by this court in <u>State
v. Lacaze</u>, 99-728 (La. App. 3 Cir. 12/8/99), 759 So.2d
773, *writ denied*, 2000-0058 (La. 10/6/00); 770 So.2d
359. Accordingly this part of Relator's writ
application is denied. <u>State of Louisiana v. Princess
LaCaze</u>, KW 02-00932 (La. App. 3 Cir.
4/22/2003)(unpublished). [Exhibit 9][7]

## 6. On Remand to the District Court

In response to the Third Circuit's remand, evidentiary

hearings were conducted in the District Court on February 13,

2004 [Exhibit 32] and March 15, 2005 [Exhibit 33].[8]

On April 20, 2005 the Third Circuit ordered the District

Court to "... rule on the claims heard in the above referenced

---

[7] Petitioner's counsel did not seek review of the Third Circuit's ruling
which disposed of all but two of his post-conviction claims. See Exhibit 12.

[8] Petitioner's post-conviction counsel provided the following
introduction at the evidentiary hearing convened on February 13, 2004: "Your
Honor, we're actually here on a remand from the Court of Appeal in which they
... ordered the Court to hold a hearing regarding two issues ... The two
issues are as follows: number one, there's an issue about ... whether or not
there were assurances made to one of the prosecution witnesses and/or his
attorney and whether or not these assurances were disclosed to defense
counsel. And number two, whether or not one of the ... witnesses for the
State... was sent to a hypnotist to ... prepare the witness to testify at
trial and whether or not this information and the video tape of that session
was disclosed." [Exhibit 32, p. 1]

case on February 13, 2004 and March 15, 2005, pursuant to this
court's ruling of April 22, 2003..." [Exhibit 10]

On May 18, 2005 the District Judge authored a ruling denying
the two claims that had survived and were the subject of the
evidentiary hearings. [Exhibit 11]

On July 19, 2005 petitioner wrote a letter to her post-
conviction counsel which stated in pertinent part, "You ...
stated that all other issues that were denied on April 22, 2003
are dead. Why are these issues dead? Why weren't these 13 issues
held in abeyance until the last two issues were ruled on."
[Exhibit 12]

### 7. *Second Writ Application to the Third Circuit Court of Appeals*

On July 20, 2005 petitioner's post-conviction counsel filed
a pleading entitled "Request for Extension of Time to File Writ
of Certiorari and/or Review." In this pleading counsel noted that
in response to his original Notice of Intent, a return date of
August 1, 2005 had been set. Counsel requested an extension to
September 2. [Exhibit 13]

On August 8, 2005 petitioner requested copies of the
transcripts of the evidentiary hearings from the Natchitoches
Parish Clerk of Court. [Exhibit 14] On the same date petitioner
corresponded with the Clerk of the Third Circuit Court of Appeals
requesting a ruling on the hearings held in the District Court.
[Exhibit 15]

11

On August 23, 2005 petitioner filed a *pro se* "Motion for Production of Public Records" requesting copies of the transcripts of the evidentiary hearings held on February 13, 2004 and March 15, 2005. [Exhibit 16]   On the same date she corresponded with the Clerk of the Third Circuit Court of Appeals requested "... a copy of the ruling dated April 20, 2005 in the case Docket Number KW 02-00932, <u>State of Louisiana v. Princess P.</u> <u>LaCaze</u>. I am trying to find out whether attorney, Timothy Allison Meche has filed an appeal in may case in the past three or four months..." [Exhibit 17]

On August 23, 2005 petitioner wrote a letter to her post-conviction counsel which stated in part, "Judge Cunningham made his decision on May 18, 2005. There is only a 30 day deadline for filing the appeal. You did not file the appeal according to the Third Circuit Court of Appeal. Why? ... I am going to file a Motion to Compel the Transcripts of the two hearings, February 13, 2004 and March 15, 2005. After I receive official notice of the denial I will file a Notice of Intent and then I will file an appeal unless you can prove that you already filed a timely appeal..." [Exhibit 18]

On August 25, 2005 the Clerk of Court advised petitioner, "There has been no 'Notice of Appeal' received from Natchitoches Parish Clerk's Office. You may want to inquire at the Clerk's Office in Natchitoches." [Exhibit 19]

On August 25, 2005, petitioner's post-conviction counsel
wrote a letter to petitioner and advised that the writ
application to the Third Circuit was due on September 2, 2005. In
support of this claim, he apparently included a copy of the
Motion and Order requesting an extension of the return date.
[Exhibit 20]

On September 6, 2005, post-conviction counsel filed the writ
application in the Third Circuit Court of Appeals under Docket
Number KW 05-1170.[Exhibits 21-22] Counsel argued four claims for
relief:

> Assignment of Error No. 1 – The State's failure to
> provide petitioner LaCaze with a copy of the videotaped
> statement of Simon Sarpy, Jr. prior to trial violated
> petitioner's rights to due process and to a fair trial
> under U.S. Const. Amends VI and XIV, La. Const. Amends
> VI and XIV [sic], §§ 2 and 16 and Giglio v. United
> States. [Exhibit 21, p. 9]

> Assignment of Error No. 2 –Because Mr. Sarpy's
> testimony was inherently unreliable due to the
> intrinsically unsound nature of the practice of
> hypnosis and due to Detective Michael Migues' failure
> to observe appropriate procedural safeguards, the
> State's failure to disclose the circumstances of Mr.
> Sarpy's testimony deprived petitioner of her rights to
> Due Process of Law and to a fair trial under U.S.
> Const. Amends. VI and XIV, La. Const. Art. 1, §§ 2 and
> 16. [id., p. 14]

> Assignment of Error No. 3 – The State's failure to
> disclose that witness Meryland Ronbison implicated
> petitioner in the victim's death only after he received
> an impression from the District Attorney's Office that
> his son would not be prosecuted for the victim's death
> in exchange for a statement implicating the petitioner
> deprived the petitioner of due process and a fair trial
> under U.S. Const. Amends. VI and XIV, La. Const. Art.
> 1, §§2 and 16 and undermines confidence in the jury's

13

verdict under <u>Kyles v. Whitley</u>. [id., p. 19]

Assignment of Error No. 4 – The District Court's
imputation of Michael Bonnette's silence about the
impression Meryland Robinson received from the District
Attorney's Office to Mrs. LaCaze's defense deprived the
petitioner of Due Process and a fair trial under U.S.
Const. Amends. VI and XIV, La. Const. Art. 1, §§ 2 and
16. [id., p. 24]


On February 6, 2006 the Third Circuit granted writs finding,

The trial court erred in denying Relator's application
for post-conviction relief as the State failed to
disclose information concerning the plea arrangement
made with a critical witness. <u>State v. Carney</u>, 334
So.2d 415 (La. 1976); <u>State v. Burbank</u>, 01-831 (La.
App. 4 Cir. 12.29/04), 893 So.2d 109; <u>State v. Brady</u>,
381 So.2d 819 (La. 1980). Accordingly, the judgment of
the trial court denying Relator's application for post-
conviction relief is hereby reversed, and the matter is
remanded to the trial court for a new trial. <u>State of
Louisiana v. Princess P. LaCaze</u>, No. KW 05-01170 (La.
App. 3 Cir. 2/26/2006), 941 So.2d 202. (Table) [Exhibit
23]

On February 16, 2006 post conviction counsel notified

petitioner of the favorable result. [Exhibit 28]

**8. *State's Application for Writs to the Louisiana Supreme Court***

On February 21, 2006 the State of Louisiana filed an

Application for Rehearing in the Third Circuit Court of Appeals.

[Exhibit 29] On April 5, 2006 the Third Circuit denied rehearing.

[Exhibit 34]

On or about May 4, 2006 the State filed a writ application

in the Louisiana Supreme Court. [Exhibit 41] The State's writ

application was based on two assignments of error – "(1) The

Court of Appeal committed grave error herein by failing to

utilize proper standards of appellate review of factual findings by a lower court, leading to absurd consequences in the reversal of a murder conviction [Exhibit 41, p. 3] and, (2) The Court of Appeal committed grave error by failing to properly apply the law of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. As the evidence shows, no Brady violation could occur unless the State committed the crime of extortion, which no one alleges and neither the Trial Court nor the Appeal Court found." [Exhibit 41, p. 4]

On February 2, 2007 the Louisiana Supreme Court vacated the judgment of the Third Circuit and reinstated petitioner's second degree murder conviction. In so doing, the court noted

> The undisclosed revelation that the state's main witness, relator's former extramarital lover, sought protection for his young son from criminal charges arising out of the same incident before he made a statement to the police was relevant to the witness's credibility as a possible motive for his testimony as a state witness at trial. See State v. Rankin, 465 So.2d 679, 681 (La.1985)('The possibility that the prosecution may have leverage over a witness due to that witness'[s] pending criminal charges is recognized as a valid area of cross-examination.'); cf. State v. Johnson, 363 So.2d 684, 686 (La.1978)('Fear that police will inflict additional harm on another has been recognized as a substantial factor in determining the voluntary nature of the confession.'). However, the main source of the witness's bias and motivation, i.e., his own involvement in the crime as the triggerman and the favorable plea agreement he struck with the state, was brought to the jury's attention, along with his criminal record. Furthermore, another witness for the state corroborated relator's involvement in planning the crime through his testimony that relator told him she would evade charges because the murder weapon was unrecoverable. Finally, relator's own testimony

included an admission that she discussed her husband's
alleged death wish with her lover and was aware he
planned to 'take care of it.'

Thus, as the district court found, even assuming that
they were made, the undisclosed assurances by the
state's investigator shielding the son of the
prosecution's main witness from criminal charges (for
which there was little or no basis) do not rise to a
level of materiality warranting reversal under <u>Brady v.
Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963), and its progeny. See, e.g., <u>State v. Marshall</u>,
81-3115, p. 16 (La.9/5/95), 660 So.2d 819, 826
('Evidence is material [and reversal warranted] only if
it is reasonably probable that the result of the
proceeding would have been different had the evidence
been disclosed to the defense. A reasonable probability
is one which is sufficient to undermine confidence in
the outcome.'). Accordingly, the district court did not
err in denying relator post-conviction relief. <u>State of
Louisiana v. Princess LaCaze</u>, 2006-1059 (La. 2/2/2007),
947 So.2d 716. [See also Slip Opinion, Exhibit 43][9]

## 9. Petition for Writ of Habeas Corpus

Petitioner filed her *pro se* petition for writ of *habeas
corpus* on February 8, 2007. She argued 21 Claims for relief:

Claim 1 - The State's failure to disclose that witness
Meryland Robinson implicated petitioner in the victim's
death only after he received an impression from the
District Attorney's Office that his son would not be
prosecuted for the victim's death in exchange for a
statement implicating the petitioner deprived the
petitioner of Due Process and a fair trial under U.S.
Constitution Amendments VI and XIV ... and undermines
confidence in the jury's verdict under <u>Kyles v.
Whitley</u>. [doc. 1-3, p. 32; petitioner's memorandum [M]
p. 18]

Claim 2 - The trial court's imputation of Michael
Bonnette's silence about the impression Meryland

---

[9] Thus, the only one of petitioner's post-conviction claims to be
reviewed by the Louisiana Supreme Court was the <u>Brady v. Maryland</u> claim
concerning the testimony of Meryland Robinson.

Robinson received from the District Attorney's Office
to petitioner's defense deprived the petitioner of Due
Process and a fair trial under U.S. Constitution
Amendments VI and XIV... [doc. 1-4, p. 1; M. p. 27]

Claim 3 - The State's failure to provide petitioner
with a copy of the videotaped statement of Simon Sarpy,
Jr. prior to trial violated Petitioner's rights to Due
Process and to a fair trial under U.S. Constitution
Amendments VI and XIV ... and Giglio v. United States.
[doc. 1-4, p. 2; M.p. 28]

Claim 4 - Because Mr. Sarpy's testimony was inherently
unreliable due to the intrinsically unsound nature of
the practice of hypnosis and due to Detective Michael
Migues' failure to observe appropriate procedural
safeguards, the State's failure to disclose the
circumstances of Mr. Sarpy's testimony deprived
petitioner of her rights to Due Process of Law and to a
fair trial under U.S. Constitution Amendments VI and
XIV ... [doc. 1-4, p. 9; M.p. 35]

Claim 5 - Petitioner was denied her rights to effective
assistance of appellate counsel, judicial review, Due
Process, and appropriate punishment due to the
incompleteness of the record of her case on appeal.
[doc. 1-4, p. 15; M.p. 41]

Claim 6 - Petitioner was deprived of her right to Due
Process by the trial court's repeated prejudicial
remarks, limitation of voir dire, and criticism of
trial counsel. [doc. 1-4, p. 20; M. p. 46]

Claim 7 - Petitioner was deprived of her right to Due
Process and a fair trial during jury selection due to
the trial court's refusal to dismiss the jury panel
which had overheard its prejudicial remarks and threat
to hold defense counsel in contempt. [doc. 1-4, p. 30;
M.p. 56]

Claim 8 - Petitioner was deprived of her right to Due
Process and a fair trial during jury selection in
violation of the ... United States Constitution
Amendments VI and XIV by the trial court's denial of
petitioner's cause challenges of certain jurors. [doc.
1-4, p. 31; M.p. 57]

Claim 9 - Petitioner was deprived of her right to Due

Process and a fair trial during jury selection in violation of ... the U.S. Constitution Amendments VI and XIV by the trial court's refusal to allow petitioner to exercise back strikes in the selection of jurors. [doc. 1-4, p. 39; M.p. 65]

Claim 10 - Petitioner was deprived of her right to Due Process and a fair trial during jury selection in violation of the ... U.S. Constitution Amendments VI and XIV due to the trial court's denial of individual sequestered voir dire. [doc. 1-5, p. 1; M.p. 67]

Claim 11 - Petitioner was deprived of her right to Due Process and a fair trial in violation of ... the United States Constitution Amendments VI and XIV ... by the State's improper allusions during opening statements to statements allegedly made by petitioner. [doc. 1-5, p. 5; M.p. 71]

Claim 12 - Petitioner was deprived of her right to Due Process and a fair trial in violation of ... the U.S. Constitution Amendments VI and XIV ... through the illegal admission of statements allegedly made by petitioner to witness Simon Sarpy. [doc. 1-5, p. 9; M.p. 75]

Claim 13 - Petitioner was deprived of her right to Due Process and a fair trial in violation of ... the U.S. Constitution Amendments VI and XIV ... by the State's improper introduction of evidence of other bad acts. [doc. 1-5, p. 10; M.p. 76]

Claim 14 - Petitioner was deprived of her right to Due Process and a fair trial in violation of ... the U.S. Constitution Amendments VI and XIV ... by the State's improper and unfairly prejudicial comments. [doc. 1-5, p. 13; M.p. 79]

Claim 15 - Petitioner was deprived of her right to Due Process and a fair trial in violation of ... the U.S. Constitution Amendments VI and XIV ... due to the trial court's failure to properly instruct the jury regarding reasonable doubt. [doc. 1-5, p. 17; M.p. 83]

Claim 16 - Petitioner was denied the right to effective assistance of counsel at trial in violation of ... the U.S. Constitution Amendments VI and XIV. [doc. 1-5, p. 18; M.p. 84]

18

Claim 17 - Petitioner was denied the right to effective assistance of counsel on appeal in violation of ... the U.S. Amendments VI and XIV. [doc. 1-5, p. 23; M.p. 89]

Claim 18 - The State did not reveal all the exculpatory material that should have been provided to the defense in violation of ... the U.S. Constitution Amendments V, VI, and XIV. [doc. 1-5, p. 27; M.p. 93]

Claim 19 - The State indicted petitioner with an illegally constituted Grand Jury and an illegally selected Grand Jury foreperson in violation of the Fourteenth Amendment to the U.S. Constitution ... [doc. 1-5, p. 36; M.p. 102]

Claim 20 - The petitioner was denied her right to Due Process and a fair trial due to juror misconduct in violation of ... the U.S. Constitution Amendments V, VI, and XIV. [doc. 1-5, p. 37; M.p. 103]

Claim 21 - The cumulation of error in this case renders petitioner's conviction unconstitutional. [doc. 1-5, p. 38; M.p. 104]

### 10. *Initial Review and the Memorandum Order of May 23, 2007*

On May 23, 2007 the undersigned completed an initial review of the pleadings and exhibits. Based on the record presented by petitioner, the undersigned concluded that Claims 2 -4, 6 and 9-21 were not fairly presented to the Louisiana Supreme Court. The undersigned concluded that these claims were now "technically exhausted" but procedurally defaulted. The undersigned directed petitioner to amend her pleadings to "... provide a detailed response demonstrating that federal *habeas* review of any of her claims is not barred by the exhaustion, or 'technical exhaustion' and procedural default doctrines..." [doc. 5]

On July 3, 2007 petitioner amended her pleadings. In the

19

amended petition she conceded that Claims 2, 6, and 15-21 should

be dismissed for the reasons stated in the Memorandum Order.

[doc. 6, pp. 1-2] However she argued that Claims 9-14 were fairly

presented to the Louisiana courts and therefore exhausted. [*id.*,

pp. 2-4] Additionally, she argued that the merits of Claims 3 and

4 should be addressed based on her demonstration of cause and

prejudice and miscarriage of justice. [*id.*, pp. 4- 11]

### *Law and Analysis*

### *1. Exhaustion of State Court Remedies*

    28 U.S.C. §2254 states, in pertinent part:

(b)(1) An application for a writ of *habeas corpus* on
behalf of a person in custody pursuant to the judgment
of a State court <u>shall not be granted unless it appears
that</u>
(A) <u>the applicant has exhausted the remedies available
in the courts of the State</u>; or

(B)(i) there is an absence of available State
corrective process; or
(ii) circumstances exist that render such process
ineffective to protect the rights of the applicant.

    This statute codified the jurisprudential rule of exhaustion

which requires that state courts be given the initial opportunity

to address and, if necessary, correct alleged deprivations of

federal constitutional rights in state cases. <u>Castille v.

Peoples</u>, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380

(1989). The doctrine serves "to protect the state courts' role in

the enforcement of federal law and prevent disruption of state

judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims.  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

In addition, a federal *habeas* petitioner must "fairly present" his federal constitutional claim to the highest state court. Skelton v. Whitley, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom.* Skelton v. Smith, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); Richardson v. Procunier, 762 F.2d 429, 431 (5th Cir.1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75

21

L.Ed.2d 937 (1983).  In Louisiana, the highest state court is the Louisiana Supreme Court.

Thus, in order to properly exhaust a claim in the Louisiana courts, a federal litigant must have fairly presented the substance of his federal constitutional claim in the Louisiana Supreme Court.

It appears that Claims 1, 5, 7 and 8 have been fully exhausted since the substance of these claims have been presented to the Louisiana courts in a procedurally correct manner. As noted above, these claims should survive initial review.

Petitioner concedes that claims 2, 6, and 15-21 remain unexhausted and she has requested dismissal of these claims. [doc. 6, p. 11] Her request should be honored and these claims should be dismissed.

Petitioner disputes the preliminary finding that Claims 9-14 were not exhausted and she requests the court to address the merits of these claims.

### A. Exhaustion of Claims 9-14

**Claim No. 9 – Petitioner was denied Due Process and a fair trial when the trial court refused to permit back-strikes during jury selection.**

This claim was argued as Assignment of Error No. 5 on direct appeal. [Exhibit 1, Appendix D] In the Memorandum Order of May 23, 2007, the undersigned suggested that the claim was not fairly presented to the Louisiana Supreme Court in petitioner's

subsequent writ application on direct review. [doc. 5]

Petitioner argues that this claim was raised in Assignment of Error No. 1, page 9 in the writ application before the Supreme Court. [doc. 6, p. 9] However, a review of the writ application reveals that petitioner raised this claim, not as a substantive claim for relief, but rather as an example to establish his general claim that the record on appeal was incomplete.  In the writ application petitioner argued, "[d]espite the court's conclusion that the missing portions of the record were immaterial, the Third Circuit relied upon these very omissions to conclude that several errors raised in the appeal either had not been preserved or were harmless because the existing record failed to reflect otherwise..." [Exhibit 1, p. 7]

Further, petitioner now argues that the refusal to permit "back strikes" deprived her of Due Process and a fair trial in violation of the provisions of the Sixth and Fourteenth Amendments to the United States Constitution. [doc. 1-4, p. 39; M. p. 65] She made no such constitutional claims with regard to this Assignment of Error before the Supreme Court. [Exhibit 1, p. 9]

Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S.Ct.

509, 512, 30 L.Ed.2d 438 (1971). Notwithstanding petitioner's assertions to the contrary, Claim 9 was not fairly presented to the Louisiana Supreme Court and therefore remains unexhausted.

**Claim No. 10 – *Petitioner was denied Due Process and a fair trial when the trial court refused to permit individual sequestered voir dire.***

This claim was argued as Assignment of Error No. 6 on direct appeal. [Exhibit 1, Appendix D] The undersigned concluded that this claim was omitted from the writ application filed in the Louisiana Supreme Court on direct review. Petitioner contends that this claim was raised as "Assignment of Error No. 4, pages 20-24..." of the Supreme Court writ application. However, a second review of the pages cited by petitioner reveals NO reference to the current claim that petitioner was denied due process when the court refused to permit "individual sequestered voir dire." In fact, petitioner argued "... that the prosecutor, throughout his opening statement, questioning of witnesses and, particularly, closing argument, engaged in a pattern of improper commentary ..." [Exhibit 1, p. 20]

Clearly, this claim was not raised before the Supreme Court and therefore remains unexhausted.

**Claim No. 11 – *Petitioner was denied Due Process and a fair trial by the State's "improper allusions" in opening statements to an inculpatory statement made by the petitioner.***

This claim was raised as Assignment of Error No. 7 on direct appeal. [Exhibit 1, Appendix D] On initial review, the

undersigned concluded that it was also not properly exhausted.
Petitioner claims that it was exhausted since it was argued as
Assignment of Error No. 1, pages 5-6 in the Supreme Court writ
application . [doc. 6, p. 3] However, a review of the writ
application reveals that petitioner did not argue the substance
of this claim before the Supreme Court. Further, petitioner did
not even argue this claim as an example to establish her general
claim that the record on appeal was incomplete. [Exhibit 1, pp.
5-6] This claim was not fairly presented to the Louisiana Supreme
Court and therefore remains unexhausted.

**Claim 12 – Petitioner was denied Due Process and a fair trial
through the illegal admission of statements allegedly made by
petitioner to witness Simon Sarpy.**

This claim was argued as Assignment of Error No. 8 on direct
appeal. [Exhibit 1, Appendix D] The undersigned also concluded
that this claim was not fairly presented in petitioner's Supreme
Court writ application. As noted previously, this claim was
arguably raised, but only in passing, as a sub-part of Assignment
of Error No. 1 in petitioner's writ application before the
Supreme Court. [Exhibit 1, p. 9] In the argument before the
Supreme Court, petitioner disputed certain findings of the Third
Circuit with respect to this error as it related to the general
allegation concerning the lack of a complete record on appeal.
Petitioner did not argue the identical substantive claim raised
herein, nor did she allege in argument that the admission of the

25

statements amounted to a violation of the Constitution or laws of the United States. Since petitioner did not fairly present the substance of this claim to the Louisiana Supreme Court, it remains unexhausted.

**Claim 13 -Petitioner was denied Due Process and a fair trial when the State introduced evidence of "bad acts."**

This claim was argued as Assignment of Error No. 9 on direct appeal. [Exhibit 1, Appendix D] The undersigned concluded that petitioner did not argue this claim in her writ application in the Louisiana Supreme Court.  Petitioner, however, argued that the claim was argued in the Supreme Court as Assignment of Error No. 3, pp. 21-22 and in footnote 24. [doc. 6, pp. 3-4] A review of the cited portion of Exhibit 1 belies this claim. In her writ application she alleged, "The prosecutor, further, repeatedly alluded to Ms. LaCaze's sexual mores to suggest that her character was bad and argued that she was a horrible mother because she exposed her children to this sordid trial." [Exhibit 1, pp. 21-22] She did not fairly present her current claims to the Supreme Court of Louisiana and therefore this claim remains unexhausted.

Further, the Supreme Court writ application contained only a fleeting reference to the United States Constitution. In her final Assignment of Error contained in the Supreme Court writ application, petitioner argued that the prosecutor's conduct violated petitioner's rights to due process and a fair trial.

26

[Exhibit 1, p. 20]  As noted above, in order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of her federal *habeas corpus* claims to the state courts. <u>Wilder v. Cockrell</u>, 274 F.3d 255, 259 (5th Cir.2001); <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004).  Here, other than petitioner's vague and fleeting reference to her "rights to Due Process and a fair trial..." petitioner argued no violations of federal law to the Louisiana Supreme Court. Such fleeting references to the federal constitution do not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights. "Moreover, to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement." <u>Wilder</u>, 274 F.3d at 260.  Thus, petitioner's arguments notwithstanding, it is clear that Claim 13 was not fairly presented and therefore remains unexhausted.

*Claim 14 – Petitioner was denied Due Process and a fair trial by the prosecutor's improper and prejudicial comments.*

This claim was raised as Assignment of Error No. 10 on direct appeal. [Exhibit 1, Appendix D] The undersigned determined that this claim was not argued in the writ application filed in the Louisiana Supreme Court. However, petitioner contends that this claim was argued as Assignment of Error No. 4 in her writ application before the Louisiana Supreme Court. As noted above,

27

in order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of her federal *habeas corpus* claims to the state courts. <u>Wilder v. Cockrell</u>, 274 F.3d 255, 259 (5th Cir.2001); <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004).  Here, other than petitioner's vague and fleeting reference to her "rights to Due Process and a fair trial..." petitioner argued no violations of federal law to the Louisiana Supreme Court. Such fleeting references to the federal constitution do not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights. "Moreover, to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement." <u>Wilder</u>, 274 F.3d at 260.  Thus, petitioner's arguments notwithstanding, it is clear that Claim 14 was not fairly presented and therefore remains unexhausted.

### Summary of Findings

Claims 9 -14 were not fairly presented to the Louisiana Supreme Court and therefore remain unexhausted.

## 2. "Technically" Exhausted but Procedurally Defaulted Claims

As previously noted in the memorandum order, Claims 2,3,4,6,9,10,11,12,13,14,15,16,17,18,19,20, and 21 were not fairly presented to the Louisiana Supreme Court and remain unexhausted. With regard to these unexhausted claims, it appears

that the claims, while unexhausted, are "technically" exhausted
since it is unlikely that petitioner could return to the
Louisiana courts to re-litigate the claims. These "technically"
exhausted claims should be considered procedurally defaulted.
The procedural default doctrine also bars federal *habeas corpus*
review if the state courts would <u>now</u> refuse to address a *habeas*
petitioner's unexhausted federal claims because litigation of
those claims would be barred by state procedural rules. Louisiana
Supreme Court Rule X, §5(a) (which provides for a limitations
period for filing writs seeking review of the actions of a court
of appeals), La. C.Cr.P. art. 930.8 (which provides a period of
limitations for litigating post-conviction claims) and La.
C.Cr.P. art. 930.4 (which prohibits consideration of successive
post-conviction attacks) would probably be invoked to bar any
further direct review or collateral litigation in the Louisiana
Courts.

Federal *habeas* review of these "technically" exhausted but
now procedurally defaulted claims is barred "...unless the
prisoner can demonstrate cause for the default and actual
prejudice as result of the alleged violation of federal law, or
demonstrate that failure to consider the claims will result in a
fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501
U.S. 722, 750-51, 111 S.Ct. 2546,  115 L.Ed.2d 640 (1991).

Petitioner has provided argument on the issues of cause and

prejudice and actual innocence only with respect to Claims 3 and 4. [doc. 6, pp. 4-11]

***Claim 3 – The State's failure to provide petitioner with a copy of the videotaped statement of Simon Sarpy, Jr. ... violated her rights to Due Process and a fair trial.***

This claim was arguably raised as Supplemental Claim 2 in petitioner's Supplemental Application for Post-Conviction Relief. [Exhibit 6] This claim survived review in the Third Circuit and was part of the subject matter of the evidentiary hearing ordered by the Third Circuit. [Exhibit 9] The claim was then argued as Assignment of Error No. 1 in petitioner's writ application to the Third Circuit. [Exhibit 21, p. 9] However, it was apparently ignored by the Third Circuit and not thereafter raised in the Louisiana Supreme Court. This claim remains unexhausted and petitioner has conceded as much. [see doc. 6]

Petitioner, however, claims that the "cause" for the default of this claim was the ineffective assistance of her post-conviction counsel who "... failed to preserve this claim by requesting the Third Circuit Court of Appeal to rule on the merits..." [doc. 6, p. 5] She claims "prejudice" as follows: "Had this information been revealed to the jury at petitioner's trial, trial counsel would have impeached Leon Sarpy during his testimony ... [and] ... would have proven that Sarpy's testimony was not credible and his testimony was in fact a way to harm

30

petitioner due to his prior involvement with her and the way she broke his heart." [doc. 6, p. 6]

**Claim 4 – Inherent unreliability of Mr. Sarpy's hypnotically induced testimony and the State's failure to disclose this fact to the defense deprived petitioner of Due Process and a fair trial.**

This claim was also arguably raised as Supplemental Claim 2 in petitioner's Supplemental Application for Post-Conviction Relief. [Exhibit 6] It, too, survived initial review in the Third Circuit and was also the subject of the evidentiary hearing on remand. [Exhibit 9] It was raised again before the Third Circuit as Assignment of Error No. 2 in petitioner's writ application. [Exhibit 21, p. 14] However, it, too, was apparently ignored by the Third Circuit and it was not thereafter raised in the Louisiana Supreme Court.

In the previous order, the undersigned concluded that this claim remains unexhausted and petitioner has likewise conceded this finding. Petitioner, however, claims as "cause" for her default that her "... post conviction counsel was ineffective because he failed to preserve this claim..." for later review. [doc. 6, p. 7]

### Cause and prejudice

In Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment

31

external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." <u>Murray v. Carrier</u>, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

Clearly, the cause of the default herein identified with respect to Claims 9 - 14 was petitioner's attorney's failure to properly advance the current federal claims in his application for writs filed in the Louisiana Supreme Court on direct review. These failures were clearly not "... an impediment external to the defense..." Thus, petitioner has not shown "cause" for her default.

Further, petitioner has chosen to argue "cause and prejudice" only with respect to the default identified with respect to Claims 3 and 4. Petitioner asserts that the "cause" of the default with respect to these remaining claims was retained post-conviction counsel's failure to seek review of these claims in the Louisiana Supreme Court in the post-

conviction proceedings.  Petitioner cannot establish cause to overcome these defaults because any error on the part of post-conviction counsel in failing to raise these claims on state post-conviction review cannot provide cause for a procedural default. See Coleman v. Thompson, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Martinez v. Johnson, 255 F.3d 229, 240-41 (5th Cir.2001); Ogan v. Cockrell, 297 F.3d 349, 357 (5th Cir.2002). This is because there is no underlying right to counsel in state post-conviction review and there is no cognizable constitutional claim based on the ineffectiveness of state post-conviction counsel. Jones v. Johnson, 171 F.3d 270, 277 (5th Cir.1999); Callins v. Johnson, 89 F.3d 210, 212 (5th Cir.1996).

If a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992).

### *Miscarriage of Justice*

Since petitioner has failed to show "cause and prejudice" for her default, federal review of her "technically exhausted" claims may therefore be had only if necessary to avoid a fundamental miscarriage of justice. Coleman, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of

justice, the petitioner must assert her actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); Glover, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter she did not commit the crime. Corwin v. Johnson, 150 F.3d 467, 473 (5 Cir.1998); Ward v. Cain, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that she is actually innocent of the crime; instead, she has merely provided conclusory statements asserting her innocence.[10] Thus, petitioner has not shown that she will not suffer a fundamental miscarriage of justice from this court's failure to consider Claims 3 and 4. Accordingly, petitioner cannot avoid procedural default of these claims on the grounds of actual innocence.

Therefore,

---

[10] With respect to Claim 3, petitioner asserted, "If this claim is not heard and the merits ruled on then an innocent woman, once again will be subject to a life sentence due to the negligence of the federal and state courts and incompetent counsel refusing to bring and entertain very important claims that would show actual innocence." [doc. 6, p. 7]

**IT IS RECOMMENDED** that Claims 2, 3, 4, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 be **DENIED AND DISMISSED WITH PREJUDICE** because these claims were not fairly presented to the Louisiana Supreme Court on either direct or collateral review and while these claims are "technically exhausted" since no state court remedies remain available to the petitioner, the claims are now considered procedurally defaulted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers, Alexandria this 10th day

of _____, 2007.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE